Khandros v Khorets (2026 NY Slip Op 50353(U))

[*1]

Khandros v Khorets

2026 NY Slip Op 50353(U)

Decided on March 18, 2026

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 18, 2026
Supreme Court, Kings County

Svetlana Khandros, as an Executor of the Estate of VALERIY KHANDROS, deceased, and SVETLANA KHANDROS, individually, Plaintiff,

againstBoris Khorets, M.D., LEONARD KOZER, M.D., PIERRE HINDY, M.D., ISAIA AVRAHAM, M.D., SERGEY TERUSHKIN, M.D., PIERRE J. NOEL, M.D., HOWARD LIANG, M.D., NEW YORK COMMUNITY HOSPITAL and NYU MEDICAL CENTER, Defendants.

Index No. 17445/2014

PlaintiffAleksey Feygin ([email protected])Mark M. Basichas & Associates, P.C.233 Broadway Rm 2707New York, NY 10279-2705212-476-0999 
Defendants Boris Khorets, M.D. and Pierre Hindy, M.D.Robert J. Walker ([email protected])McNamee Walker60 Broadhollow RoadMelville, NY 11747516-248-2002Defendant Leonard Kozer, M.D.Joy Woda Schneider ([email protected])Kerley, Walsh, Matera & Cinquemani, PC2174 Jackson AveSeaford, NY 11783516-409-6200 
Defendant Isaia Avraham, M.D.Wayne E. Cousin ([email protected])Sheeley LLP100 Wall Street, 19th Fl.New York, NY 10005646-650-5952 
Defendant Sergey Terushkin, M.D. 
Rachael Francesca Miller ([email protected])McAloon & FriedmanOne State Street Plaza 23rd FloorNew York, NY 10004212-331-0295 
Defendants Pierre J. Noel, M.D. and The New York Community HospitalArthur I. Yankowitz ([email protected])Barker Patterson Nichols, LLP115 E. Stevens Avenue, Suite 206Valhalla, NY 10595914-495-4805 
Defendants Howard Liang, M.D. and NYU Medical CenterJordan Courtney Conger ([email protected])Aaronson Rappaport Feinstein & Deutsch, LLP600 Third AvenueNew York, NY 10016212-593-6792 

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR § 2219 [a], of the papers considered in the review:
NYSCEF #s: Seq 15: 55—77, 153—158, 173Seq 16: 78—110, 171—172
Seq 17: 111—127, 159—164, 174Seq 18: 128—149, 165—170, 175Defendants New York Community Hospital ("NYCH") and Pierre J. Noel, M.D. ("Dr. Noel") move for an Order, pursuant to CPLR 3212, granting summary judgment in their favor, dismissing all Plaintiff's claims and any cross claims against them, and removing them from the caption of this action (Seq. No. 15).
Defendant Leonid Kozer, M.D., sued herein as Leonard Kozer, M.D. ("Dr. Kozer") separately moves for an Order, pursuant to CPLR 3212, granting summary judgment in his [*2]favor, dismissing Plaintiff's Complaint against him in its entirety, and removing him from the caption of this action (Seq. No. 16).
Defendant Sergey Terushkin, M.D. ("Dr. Terushkin") separately moves for an Order, pursuant to CPLR 3212, granting summary judgment to said defendant and dismissing Plaintiff's Complaint against him (Seq. No. 17).
Defendants NYU Hospitals Center ("NYU"), sued herein as NYU Medical Center, and Howard Liang, M.D. ("Dr. Liang") separately move for an Order, pursuant to CPLR 3212, granting summary judgment to said defendants, dismissing Plaintiff's Complaint against them in its entirety, and further move to strike Plaintiff's Supplemental Bill of Particulars dated May 1, 2024 and April 10, 2025 (Seq. No. 18).
Plaintiff does not oppose the motion of Dr. Kozer. Accordingly, the summary judgment motion on behalf of Dr. Kozer (Seq. No. 16) is granted without opposition, and this action is dismissed against Dr. Kozer.
Plaintiff commenced this action, as administrator of the estate of Valeriy Khandros ("Decedent") on December 17, 2014, asserting claims of medical malpractice, lack of informed consent, and wrongful death against the moving defendants and others.[FN1]
The claims arise from alleged delayed diagnosis and treatment of ischemic bowel. Plaintiff also asserts claims for loss of services.
Decedent was 71 years old at the time of the events at issue. He was initially treated at NYCH from November 17, 2013 through December 5, 2013, then treated at NYU from December 5, 2013 until his death on December 13.
Decedent was initially referred to NYCH by his private cardiologist, Dr. Kozer, due to elevated blood pressure and cardiovascular symptoms. Non-moving Defendant Boris Khorets, M.D. ("Dr. Khorets") was his attending physician throughout the NYCH admission. He testified that his role as attending physician was to "coordinate care rendered to Mr. Khandros, follow up with consultants, follow his tests, organize his tests," and to discuss or implement the recommendations of consultants. He stated that he "participated in full care of this patient," including when he was in the ICU, until the family transferred Decedent to NYU.
During his NYCH admission, Decedent was documented as having infrequent or no bowel movements, persistent hiccups, and an incarcerated hernia, which prompted an abdominal CT scan on November 23.
On November 23, Decedent underwent an abdominal CT scan with findings suspicious for ischemic bowel. Surgical intensivist Dr. Noel examined him on November 24 and entered a note to continue conservative treatment and monitoring rather than surgical intervention. Surgical consult Dr. Terushkin also examined the patient on November 24, according to his testimony and the medical chart. On November 25, x-rays showed findings consistent with small bowel obstruction, which were reviewed by Dr. Terushkin.
A nasogastric tube was placed on November 27. The tube was discontinued on December 1 following a discussion between Dr. Terushkin and non-moving Defendant Dr. Hindy, a [*3]gastroenterologist. A nasogastric tube was inserted again two days later in response to Decedent's worsening lethargy, vomiting, poor oral intake, and x-rays showing small bowel obstruction.
At the request of his family, Decedent was transferred from NYCH to an NYU facility on December 5, 2013. He was documented as having small bowel obstruction, pneumonia, and worsening lethargy on admission. He was intubated and transferred to the surgical ICU at 9:20 p.m. on December 5. Dr. Liang was the surgical attending who evaluated Decedent from December 5 through December 9. He was moved to the medical ICU on December 9 for treatment of respiratory failure secondary to pneumonia and acute kidney injury.
Decedent exhibited signs of acute abdomen and distension on December 11. On December 12, Decedent passed black tarry stool at approximately 4:00 a.m., indicating a gastrointestinal bleed. Nonparty Dr. Rajapaka, an NYU-employed gastroenterologist, performed a flexible sigmoidoscopy that confirmed blood but did not identify the source of bleeding. Decedent was prepped for a colonoscopy.
Nonparty Dr. Khan, another gastroenterologist employed by NYU [FN2]
, performed the colonoscopy at 8:30 a.m. on December 12 to determine the source of the GI bleed, but as visualization was limited due to the large amount of black stool, the procedure was aborted.
Shortly after the colonoscopy, Decedent's clinical condition worsened. An x-ray at 11:45 a.m. revealed a large volume of free air in the abdomen, indicating a bowel perforation. Dr. Liang performed a resection of the right colon. After the procedure, Decedent remained critically ill, intubated, and dependent on vasopressors and oxygen support. Dr. Liang advised the family that his prognosis was poor, and they consented to withdraw life-sustaining measures. He passed away on December 13, 2013.
Plaintiff alleges that the defendant physicians departed from the standard of care in diagnosing and treating Decedent's bowel condition, and that these departures proximately caused his injuries and death. With respect to the moving defendants, Plaintiff alleges that surgical intensivist Dr. Noel and surgeon Dr. Terushkin departed from the standard of care in their assessment and plan for conservative treatment over surgery, and that Dr. Terushkin further departed from the standard of care by recommending removal of Decedent's nasogastric tube. Plaintiff's claims against NYCH arise from vicarious liability for physicians who treated Decedent at that hospital, including co-defendants Dr. Noel, Dr. Terushkin, attending physician Dr. Khorets, and gastroenterologist Dr. Hindy.
Plaintiff also alleges that during Decedent's NYU admission, Dr. Liang failed to timely diagnose and operate on Decedent. Plaintiff's claims against NYU arise from vicarious liability for physicians who treated him at that hospital, including co-defendant Dr. Liang, nonparty gastroenterologist Dr. Khan who performed the colonoscopy, and other staff.
As an initial matter, NYCH moves for summary judgment on the grounds that they are not vicariously liable for the acts and omissions of any co-defendant physicians who rendered treatment at NYCH, other than Dr. Noel.
Generally, a hospital's vicarious liability only extends to employees acting within the [*4]scope of their employment, not independent contractors and private physicians with admitting privileges (see generally Bennett v State Farm Fire and Cas. Co., 198 AD3d 857, 857 [2d Dept 2021]; Fuessel v Chin, 179 AD3d 899, 901 [2d Dept 2020]). In the absence of an employee/employer relationship, courts have recognized an exception "where a patient comes to the emergency room seeking treatment from the hospital and not from a particular physician of the patient's choosing" (Fuessel at 901; see Muslim v Horizon Med. Group, P.C., 118 AD3d 681, 684 [2d Dept 2014]; Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976]).
NYCH submits an affidavit from their Senior Vice President and Chief Operating Officer and Administrator, Donna J. Fitzmartin. She avers that Dr. Khorets, Dr. Hindy, Dr. Terushkin, Dr. Kozer, and Dr. Avraham were "attending physicians with privileges at NYCH and not employed by the hospital" during the events at issue. They concede that Dr. Noel, a staff surgical intensivist in the ICU, was employed by the hospital.
Based on testimony and evidence in the medical chart, NYCH argues that Decedent was admitted to the hospital by Dr. Khorets, a private attending physician at the request of his cardiologist, Dr. Kozer. Dr. Khorets and Dr. Kozer are named as his primary physicians throughout the NYCH record. Dr. Khorets also testified that he was a private attending physician with admitting privileges at NYCH. He further testified that Dr. Kozer "asked me to participate in his care . . . to be the attending of record for Mr. Khandros," and that he was responsible for following the Decedent's care and requesting consults.
The Court finds that NYCH has established prima facie that they are not vicariously liable for the acts and omissions of Dr. Khorets, Dr. Hindy, Dr. Terushkin, or the dismissed/discontinued defendants Dr. Kozer and Dr. Avraham. Plaintiff has not raised a genuine issue of fact as to their employment status. Furthermore, the Mduba doctrine does not apply in these circumstances, as the evidence in the record shows Decedent was admitted to the hospital by a private attending physician, rather than seeking treatment from NYCH through the emergency department. NYCH is therefore not liable for the acts of this private attending or other non-employed physicians. The part of NYCH's motion seeking summary judgment as to these vicarious liability claims is therefore granted.
In evaluating a summary judgment motion in a medical malpractice action, the court considers the "essential elements" of medical malpractice: "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury" (Miller-Albert v EmblemHealth, 231 AD3d 1147, 1148 [2d Dept 2024] [internal quotation marks and citations omitted].) "Thus, a defendant moving for summary judgment must make a prima facie showing either that there was no departure from accepted medical practice, or that any departure was not a proximate cause of the patient's injuries. To meet that burden, a defendant must submit in admissible form factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice." (I.d.) "If the defendant makes such a showing, the burden shifts to the plaintiff to raise a triable issue of fact as to those elements on which the defendant met its prima facie burden of proof" (Delia v Wieder, 236 AD3d 857, 858 [2d Dept 2025]). "Generally, summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Garcia v Hollander, 241 AD3d 651, 653 [2d Dept 2025] [internal quotation marks and citations omitted].) However, "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023]).
In support of their motion of behalf of Dr. Noel and NYCH, the movants submit an expert affirmation from Matthew J. McKinley ("Dr. McKinley"), a licensed physician board certified in internal medicine and gastroenterology.
The expert opines that Dr. Noel was at all times following "the orders and instructions of the attending physicians." He states that on November 24, 2013, Dr. Noel examined the patient as a "hospital surgical intensivist" and documented that he had a history of abdominal pain and incarcerated umbilical hernia. The expert opines that Dr. Noel "appropriately discussed the case with attending surgeon Dr. Terushkin, who recommended to continue conservative management and close observation and transfer to ICU for cardiac issues."
The expert also opines, without detail, that the treatment of Dr. Noel was not a proximate cause of Decedent's injuries or any subsequent complications.
Based on evaluation of the submissions, this Court finds that the movant's expert did not establish prima facie that Dr. Noel complied with the standard of care. The expert merely states in a conclusory manner that Dr. Noel "followed the orders and instructions" of other physicians, specifically the attending surgeon Dr. Terushkin, without offering any detail as to Dr. Noel's own examination, recommendations, or orders from November 23-25. Dr. Noel is repeatedly referred to in the record as a staff surgical intensivist and physician, not an assistant or resident. There is no evidence that he was acting under Dr. Terushkin's direction or supervision and that he did not have the authority to exercise independent medical judgment. In fact, the movant's expert contradicts his own statements that it was solely Dr. Terushkin who "recommended" the conservative treatment plan after Dr. Noel discussed his findings with him. In a footnote referring to Dr. Noel, the expert states that on November 24, Dr. Terushkin "discussed case with house physician . . . and agreed with treatment and plan," and again on November 25, "he discussed the case with house physician, examined patient and agreed with treatment plan" (emphasis added).
"A defendant's failure to satisfy this prima facie burden requires denial of the motion, regardless of the sufficiency of the opposing papers" (Ciceron v Gulmatico, 220 AD3d 732, 734 [2d Dept 2023]). Here, there remain issues of fact based on the record as to Dr. Noel's actual role in making recommendations and decisions regarding Decedent's plan of care. The movant fails to address these issues, and the opinions offered by their expert are wholly conclusory, speculative, and not supported by the record. Further, even if they had met their prima facie burden summary judgment must nevertheless be denied. As discussed below in determining Dr. Terushkin's motion, Plaintiff sufficiently raises issues of fact as to whether proceeding with conservative management and monitoring instead of surgical intervention was a departure from the standard of care. As it is not established who made the decision to not proceed surgically during the admission to NYCH, a jury's determination is necessary. The motion on behalf of Dr. Noel is therefore denied with respect to medical malpractice and wrongful death.
Notwithstanding, although Plaintiff's expert comments generally on Dr. Noel "and staff" at NYCH, there are no detailed allegations that any other physicians, nurses, or staff exercised their own medical judgment or independently departed from the standard of care while assisting the named defendants at NYCH. Therefore, summary judgment is granted to the extent of dismissing the claims against "other staff" at NYCH.
Plaintiff does not oppose the part of NYCH and Dr. Noel's motion seeking dismissal of the lack of informed consent claim. The motion is granted to the extent of dismissing this claim against them.
Next, in support of Dr. Terushkin's motion for summary judgment (Seq. No. 17), the movant submits an expert affirmation from Scott J. Belsley, M.D. ("Dr. Belsley"), a licensed physician board certified in general surgery, who avers that he has relevant experience and background in managing ischemic bowel, small bowel obstruction, and ileus.
Dr. Belsley opines that Dr. Terushkin complied with the standard of care in evaluating and treating the patient from a surgical perspective. He opines that during Dr. Terushkin's involvement in Decedent's care from November 23, 2013 through December 5, 2013, surgery to treat ischemic bowel and/or small bowel obstruction was not indicated, and Decedent's conditions were appropriately treated with medical management.
The expert opines that the decision of whether to perform surgery for ischemic bowel "depends upon its cause and whether blood flow can be surgically restored," such as by removing a blood clot and releasing adhesions. He opines that surgery may also be required to remove necrotic, gangrenous, or perforated intestine. The expert opines that none of these conditions were indicated by Decedent's abdominal CT scans on November 23, 2013 or November 27, 2013. Instead, he opines that Decedent "developed ischemic bowel due to low blood flow state" as a result of his comorbidities, specifically congestive heart failure. For this reason, he opines that the patient "required medical treatment and not surgery to maximize cardiac output." He opines that at all times, Dr. Terushkin appreciated, documented, and managed the patient's symptoms.
The expert also opines that Decedent's evidence of a partial small bowel obstruction was a "manifestation of the patient's ischemic bowel" and similarly caused by his heart failure, and that his intestines "were not receiving enough energy from blood carrying oxygen." Therefore, he opines that this partial obstruction did not require surgical intervention. He opines that his condition was more appropriately described as an ileus, a type of bowel obstruction "due to a medical cause" rather than the type which can be removed surgically, and it was within the standard of care to treat this condition through non-surgical, medical management.
The expert opines that Decedent's clinical condition began improving during his NYCH stay, and on November 30 and December 1, it was documented that Decedent had bowel movements, he was passing flatus, and he denied abdominal pain. The expert therefore opines that Dr. Terushkin appropriately determined the patient did not require surgery, and Decedent "never reached the point of critical ischemia" or demonstrated signs of necrotic bowel.
Regarding the specific claim that Dr. Terushkin improperly removed Decedent's nasogastric tube on December 1, the expert opines that this decision was not a deviation from the standard of care. The expert opines that the nasogastric tube was appropriately inserted on November 27, because the patient was vomiting and an abdominal x-ray showed a small bowel obstruction. By December 1, the expert opines that Decedent's vital signs were stable, he was not draining from the nasogastric tube, and he had bowel movements and flatus as noted above. The expert therefore opines that despite his evidence of a partial small bowel obstruction, "the patient had all clinical indications to remove the tube and try a PO challenge, which involves giving food to a patient to see if they can eat or drink without vomiting." The expert opines that Dr. Terushkin and non-moving defendant Dr Hindy appropriately agreed to try removing the tube.
Finally, the expert opines that Dr. Terushkin was unable to take further steps to assess the patient for surgery on December 4, because by that time Decedent's family had decided to transfer him to another facility.
On the issue of proximate causation, the expert opines that Decedent's partial small [*5]bowel obstruction or ileus was improving during his NYCH admission, as evidenced by the November 27 CT scan which showed the ischemic bowel had improved and there was no pneumatosis (abnormal gas in the wall of the colon). The expert opines that, in contrast to the November 23 CT scan, the absence of pneumatosis suggested his condition had improved "both radiologically and clinically" and no surgical intervention was necessary. The expert also points to the subsequent December 6 CT scan at NYU, which showed no evidence of small bowel obstruction, "providing further evidence that conservative, medical management" had been effective. The expert opines that the December 12 perforation during the colonoscopy at NYU was ultimately the cause of Decedent's septic shock and death, and that this event was unrelated to any alleged delays in treatment from Dr. Terushkin.
Based on these submissions, Dr. Terushkin has established prima facie entitlement to summary judgment, offering an expert opinion that Decedent did not exhibit signs of the type of small bowel obstruction or necrotic bowel which would require surgery rather than medical management, and that it was within the standard of care to attempt removal of the nasogastric tube between December 1 and December 3. The expert also sets forth opinions establishing prima facie that Dr. Terushkin's alleged departures were not a substantial factor in the worsening of Decedent's bowel ischemia or small bowel obstruction, opining that he showed improvement through non-surgical management during his time at NYCH, and that his death following the perforation and septic shock at NYU did not result from this treatment. The burden therefore shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], board certified in surgery and colorectal surgery. Plaintiff presented a signed, unredacted copy of the affirmation to the Court for in camera inspection.
With respect to Dr. Terushkin, Plaintiff's expert opines that the abdominal CT scan of November 23, 2013 was consistent with "ischemic/necrotic bowel" due to the presence of mural thickening of the cecum, inflammation of the colon, pneumatosis ("a sign suggestive of bowel ischemia, bowel necrosis, or impending or actual bowel perforation"), and distension of the ileum with mural thickening "which suggested that the process was not limited to one area and may be progressive or systemic."
Plaintiff's expert opines that these CT findings "represented a surgical emergency." They counter the opinion of the movant's expert that his bowel ischemia/necrosis could be medically managed. Instead, they opine that upon review of the November 23 CT scan and examination of the patient, Dr. Terushkin departed from the standard of care by failing to immediately "take the patient to the operating room for urgent bowel resection." The expert opines that the standard of care required surgical bowel resection, followed by an ileostomy to create a stoma in the abdominal wall, or an anastomosis, depending on whether a portion of the bowel was still viable.
Plaintiff's expert disagrees with the movant's expert that Decedent could and did improve with medical management. The expert notes that Decedent continued to have no bowel movements or flatus, he began vomiting on November 25, and an x-ray revealed a small bowel obstruction had developed. The expert notes that a small bowel obstruction is a complication that may occur "due to bowel ischemia." On this date, the expert opines again that the standard of care required Dr. Terushkin to perform exploratory surgery, rather than a conservative non-operative approach. Plaintiff's expert also counters the movant's expert that the November 27 CT scan indicated his condition was improving, opining that the study revealed "a worsening and evolving bowel process" and that his small intestine was more swollen than on the prior study. [*6]The expert opines that Decedent's bowel ischemia or necrosis was a "surgically correctable cause of small bowel obstruction," countering the movant's expert opinion that surgery was not indicated.
Plaintiff's expert also opines that it was a departure from the standard of care to recommend and order removal of the nasogastric tube on December 1. According to the medical records, Dr. Terushkin and Dr. Hindy were both involved in this recommendation and decision, and the expert opines that they both departed from the standard of care in the setting of a small bowel obstruction which showed "no improvement" on his abdominal x-rays.
On proximate causation, Plaintiff's expert states that he "completely disagrees" with the opinion of the movant's expert that Decedent was improving with non-surgical management, stating that there was "objective evidence of worsening" of his small bowel obstruction on multiple x-rays, even after the nasogastric tube was inserted on November 27. The expert addresses Dr. Belsley's opinion that a subsequent December 6 CT scan showed no evidence of bowel ischemia, opining that a non-contrast CT scan does not rule out the existence of bowel ischemia. Further, the expert opines that Decedent's December 12 surgical pathology revealed the bowel ischemia/necrosis had never resolved.
The expert also opines that removing the nasogastric tube on December 1 was a proximate cause of Decedent's clinical deterioration, as this triggered him becoming "increasingly lethargic and confused, with poor oral intake, abdominal pain, distention, recurrent vomiting, and worsening obstruction on imaging."
The expert opines the alleged failure of Dr. Terushkin to recommend, order, and perform an exploratory surgery and bowel resection worsened his outcome and deprived him of a chance of recovery. In the opinion of Plaintiff's expert, Dr. Terushkin "negligently squandered an opportunity to timely treat bowel ischemia/necrosis and small bowel obstruction" with surgery over the course of his NYCH admission, worsening Decedent's chance of recovery.
Based on evaluation of the submissions, Plaintiff's expert has raised issues of fact as to whether Dr. Terushkin departed from the standard of care during his evaluation and treatment of Decedent from November 23 through December 4, including by opting for non-operative, medical management over surgery, and for his role in the removal the nasogastric tube on December 1.
Additionally, on the issue of proximate causation, Plaintiff's expert raises issues of fact as to whether these acts and omissions caused a worsening of his bowel ischemia and small bowel obstruction, which led to further complications including acute abdomen, gastrointestinal bleed, and his death following the colonoscopy at NYU. The Court notes that there can be more than one proximate cause of injury and death. The issue of whether the alleged departures of Dr. Terushkin contributed to Decedent's deterioration, worsened prognosis, and death, independently of the acts and omissions of the NYU defendants, is an issue which must be resolved by a jury. For this reason, summary judgment as to the medical malpractice and wrongful death claims against Dr. Terushkin is denied.
Plaintiff does not oppose the part of the motion seeking to dismiss the lack of informed consent claims against Dr. Terushkin, and therefore summary judgment is granted to the extent of dismissing that cause of action only.
Turning to the summary judgment motion (Seq. No. 18) of NYU and Dr. Liang, the movants submit an expert affirmation from Daniel Herron, M.D. ("Dr. Herron"), a licensed physician board certified in surgery who avers he has experience and background treating bowel [*7]conditions and performing laparoscopic surgery and endoscopy.
Dr. Herron opines on the acts and omissions of co-defendant Dr. Liang, an NYU employee. The expert also offers opinions as to NYU Langone employees Dr. Khan and Dr. Rajapaka. Dr. Herron opines that Decedent was "extremely sick upon transfer to NYU with sepsis and multi-organ system failure," which required "ICU admission and aggressive antibiotic and fluid support rather than immediate surgery for suspected small bowel obstruction."
The expert opines that although Decedent was admitted to the surgical ICU for possible bowel resection, surgery was not indicated when Dr. Liang evaluated and treated him from December 5 through December 9. He opines that in Decedent's case, he had signs of "either an ileus of partial [small bowel obstruction] while at NYU," but his occasional bowel movements and ability to pass flatus demonstrated he did not have a complete small bowel obstruction. The expert opines that surgical treatment of a small bowel obstruction was therefore not necessary, and "conservative medical management was appropriate" at that time. The expert opines that Decedent received appropriate treatment including antibiotic, respiratory, and fluid support and nasogastric feeding.
Following his transfer to the medical ICU, the expert opines that the note Decedent had no bowel movements for three days was "based upon the Decedent's wife's observations" and contradicted by other records showing he had diarrhea on December 9 and December 10. On December 12, he also passed dark liquid indicating bloody stool. For this reason, the expert opines that he did not have a complete small bowel obstruction which would require emergency surgery.
As to the alleged symptoms of bowel ischemia, Dr. Herron opines that he did not present with bowel ischemia requiring surgical intervention during his admission to NYU. He opines that bowel ischemia can be diagnosed by a CT scan or colonoscopy. Based on his review of the non-contrast abdominal CT scan from December 6, the expert opines there was "no evidence of ischemia, resolving or otherwise." He opines that this was also supported by his tolerance of tube feeding and absence of acute abdomen until December 11. The expert acknowledges that a non-contrast CT scan has "limited sensitivity for assessment of ongoing ischemia," but opines that contrast dye was contraindicated for the patient due to his acute kidney injury and history of contrast-induced nephropathy. He opines it was not necessary to order further imaging and "it was within he standard of care to monitor the decedent and provide supportive care."
The expert opines that Decedent did not show any clinical signs of ischemic bowel "until the onset of an acute abdomen" on December 11 and evidence of a gastrointestinal bleed on December 12. At this time, the expert opines that a timely x-ray was performed and a GI consult was ordered.
Regarding the sigmoidoscopy performed by Dr. Rajapaka and the colonoscopy performed by Dr. Khan, the expert opines that this was "a reasonable, indicated procedure to attempt to diagnose the decedent's rectal bleeding, which may have been secondary to infection or perhaps ischemic bowel." Dr. Herron opines that a colonoscopy is not contraindicated in the setting of a potential ischemic bowel and is a proper diagnostic method. The expert further opines that additional CT imaging "would have risked delaying possible resolution of the bleeding," and "the benefit to the patient of proceeding with colonoscopy outweighed the risk of potential complication."
Dr. Herron further opines that following the attempted colonoscopy, Decedent's perforation was timely recognized, and Dr. Liang appropriately performed an emergency surgery [*8]without complications.
On the issue of proximate causation, the expert opines that perforation is a known risk of colonoscopy which can occur in the absence of malpractice, and there was no delay in treatment which proximately caused his injuries or death. The expert also opines that Decedent remained in critical condition and ultimately passed away due to his overall poor prognosis and not any departure from the standard of care by Dr. Liang or other NYU physicians.
The Court finds that the movant's expert sufficiently establishes prima facie entitlement to summary judgment as to Dr. Liang. The movant also addresses the claims against NYU regarding the acts of other physicians, including the colonoscopy performed by nonparty Dr. Khan, and establishes that this procedure was not contraindicated and it was performed within the standard of care. The burden therefore shifts to Plaintiff to raise an issue of fact.
In opposition, Plaintiff submits an expert affirmation from a licensed physician [name of expert redacted], board certified in surgery and colorectal surgery. Plaintiff presented a signed, unredacted copy of the affirmation to the Court for in camera inspection.
Plaintiff's expert opines that Dr. Liang departed from the standard of care by failing to timely perform a surgical intervention on Decedent to treat his bowel ischemia and persistent bowel obstruction.
The expert opines that Dr. Liang inappropriately relied on the non-contrast abdominal CT scan on December 6, 2013. Plaintiff's expert counters the opinion of Dr. Herron that the CT scan indicated that surgery was not necessary. Instead, they opine that a non-contrast CT scan was limited in nature and could not rule out the "high probability" that the patient had bowel ischemia which was not resolving, and it was a departure from the standard of care for Dr. Liang not to perform an emergent bowel resection.
The expert opines that Decedent's clinical symptoms on December 11, 2013 further evidenced worsening bowel ischemia. These symptoms included abdominal distention, infrequent or no bowel movements, and an abdominal x-ray showing possible ileus or obstruction. Decedent then had a decrease in hemoglobin and black tarry stool at approximately 4:00 a.m. on December 12, suggesting internal bleeding. The expert opines that the appropriate treatment required by the standard of care was to "take the patient to the operating room for bowel resection," rather than performing a sigmoidoscopy and colonoscopy as the NYU physicians Dr. Rajapaka and Dr. Khan did.
Plaintiff's expert specifically opines that NYU's gastroenterologist Dr. Khan departed from the standard of care by performing a contraindicated colonoscopy. The expert notes that Dr. Khan was aware of a "high likelihood" of ischemic bowel, yet he performed the colonoscopy "to rule out ischemic bowel or other source of bleeding." The expert opines that Dr. Khan attempting this procedure was "absolutely contraindicated" for a patient with an ischemic bowel, as it carries a heightened and "unjustifiable risk" of perforation.
The expert opines that the surgical pathology findings "confirmed bowel ischemia with necrosis," consistent with Decedent's first CT scan of November 23, 2013. In the expert's opinion, these findings indicate that he had consistent and progressively worsening bowel ischemia throughout his NYU admission and the non-surgical management was not effective. The expert opines that a timely surgical bowel resection by Dr. Liang, prior to the December 12 colonoscopy and perforation, would have given Decedent a "substantial probability of recovery." Thus, he opines that the alleged failure to surgically treat the bowel ischemia and small bowel obstruction was a proximate cause of his worsened condition and death.
Additionally, the expert opines that the alleged contraindicated colonoscopy performed by Dr. Khan was a direct and proximate cause of Decedent's bowel perforation, peritonitis, and septic shock, after which "his probability of any meaningful recovery was effectively non-existent" and he was ultimately removed from life support.
Plaintiff's expert raises clear issues of fact, including whether it was a departure from the standard of care for Dr. Liang not to recommend, order, and perform an emergent surgery, and whether the colonoscopy procedure performed by NYU physician Dr. Khan was contraindicated. Plaintiff's expert also raises issues of fact as to proximate causation, opining that both the delay in surgical intervention and the performance of the colonoscopy at NYU proximately caused Decedent's injuries and death. Accordingly, NYU and Dr. Liang's motion for summary judgment on the medical malpractice and wrongful death claims is denied.
On the lack of informed consent claim against NYU, this is a distinct cause of action on which the plaintiff must ultimately demonstrate:
"(1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury" (Figueroa-Burgos v Bieniewicz, 135 AD3d 810, 811 [2d Dept 2016] [internal citations and quotation marks omitted]).NYU's expert opines that Decedent's family was properly informed of the foreseeable risks and benefits of a colonoscopy before executing a consent form on December 12. Defendant's expert further opines that in light of Decedent's active GI bleed, "it would have been unreasonable for a patient to refuse this procedure" to identify the source of the bleeding, even considering the known risk of perforation.
Conversely, Plaintiff's expert reiterates their opinion that the colonoscopy was contraindicated and "should never have been offered as a possible treatment option." For this reason, they opine that the foreseeable risk of perforation was not properly disclosed to Decedent's family before they consented to the procedure.
Plaintiff's expert also counters the movant's expert opinion on the second element of informed consent. The expert opines that no reasonably prudent person in the patient's position would consent to undergo a colonoscopy, given the high risk of perforation and lack of any therapeutic benefit in treating bowel ischemia.
As to proximate causation, with respect to an informed consent claim, this element "is construed to mean that the actual procedure performed for which there was no informed consent must have been a proximate cause of the injury" (Figueroa-Burgos v Bieniewicz, at 811-812, quoting Trabal v Queens Surgi-Ctr., 8 AD3d 555 [2d Dept 2004] [emphasis added]). Despite the movant's position that perforation is a known risk of colonoscopy, there remain issues of fact as to whether the performance of the colonoscopy itself was a proximate cause of Decedent's perforation and death, as discussed above in relation to the medical malpractice claim.
In sum, the Court finds there are clear issues of fact on all three elements of the informed consent claim against NYU. The experts offer conflicting opinions as to whether the foreseeable risks, benefits, and alternatives of the colonoscopy were properly disclosed. They also present [*9]conflicting opinions on whether a reasonable person in the patient's position would have consented if informed of those risks. Finally, there are issues of fact that the alleged unconsented-to procedure was a proximate cause of Decedent's injuries and death. As these issues require resolution of a jury, the part of NYU's motion seeking summary judgment on the informed consent claim is denied.
Plaintiff does not oppose dismissal of the informed consent claim against Dr. Liang, who did not perform the December 12 colonoscopy. Summary judgment is therefore granted to the extent of dismissing the informed consent claim against Dr. Liang, only.
The Court rejects the part of NYU and Dr. Liang's motion seeking to strike claims from Plaintiff's Second Supplemental Bill of Particulars against NYU (dated May 1, 2024) and Second Supplemental Bill of Particulars against Dr. Liang (dated April 10, 2025). Plaintiff's initial bill of particulars was dated June 12, 2015, and they filed a Supplemental Bill of Particulars dated March 4, 2019, adding specificity to their loss of services claims only.
As Plaintiff argues in opposition, there was an outstanding demand for a Second Supplemental Bill of Particulars "setting forth specific claims of negligence" against the defendants. A Compliance Conference Order dated December 2, 2020 directed Plaintiff to provide "a supplemental verified bill of particulars as previously ordered." The Court finds that in light of December 2, 2020 order, no further leave of the Court was required to supplement their bill of particulars in this manner, and these specified claims of negligence were appropriately served during the course of discovery and prior to the Note of Issue on July 24, 2025. Further, no new claims of malpractice were asserted, and all the claims at issue have been addressed in full by the experts in this motion. That part of the motion is therefore denied.
Lastly, NYU and Dr. Liang argue in their motion that Plaintiff's Complaint "does not include a claim for loss of consortium and/or services" and that this claim appeared for the first time in the first Supplemental Bill of Particulars dated March 4, 2019. Although Plaintiff did supplement her Bill of Particulars to include more specificity on the loss of services claim, a review of the pleadings confirms that it was pled as the Twelfth Cause of Action against all Defendants when this action was commenced. Consequently, that part of the motion is denied.
As there remain issues of fact as to the underlying medical malpractice and wrongful death claims, the motions of NYCH, Dr. Noel, Dr. Terushkin, NYU, and Dr. Liang are denied with respect to Plaintiff's claims for loss of services (see Weiss v Vacca, 219 AD3d 1375, 1378 [2d Dept 2023]; Powell v Prego, 59 AD3d 417, 418 [2d Dept 2009]).
Accordingly, it is hereby:
ORDERED that the part of the motion (Seq. No. 15) seeking summary judgment on behalf of NYCH is granted to the extent of dismissing any vicarious liability claims for the acts and omissions of Dr. Khorets, Dr. Kozer, Dr. Hindy, Dr. Avraham, Dr. Terushkin, and unnamed "other staff" at NYCH; and it is further
ORDERED that the part of the motion (Seq. No. 15) seeking summary judgment on behalf of Dr. Noel, is granted to the extent of dismissing the claim of lack of informed consent, and the motion is otherwise denied; and it is further
ORDERED that the part of the motion (Seq. No. 15) seeking summary judgment on behalf of NYCH for their vicarious liability for Dr. Noel is denied; and it is further
ORDERED that the part of the motion (Seq. No. 16) seeking summary judgment on behalf of Dr. Kozer is granted without opposition; and it is further
ORDERED that the part of the motion (Seq. No. 17) seeking summary judgment on [*10]behalf of Dr. Terushkin is granted to the extent of dismissing the claim of lack of informed consent, and the motion is otherwise denied; and it is further
ORDERED that the part of the motion (Seq. No. 18) seeking summary judgment on behalf of Dr. Liang is granted to the extent of dismissing the claim of lack of informed consent, and the motion is otherwise denied; and it is further
ORDERED that the part of the motion (Seq. No. 18) seeking summary judgment on behalf of NYU, including vicarious liability claims on behalf of Dr. Liang and nonparty Dr. Khan, and the lack of informed consent claim, is denied in its entirety; and it is further
ORDERED that as Dr. Avraham was previously dismissed from this action by the Decision and Order dated June 28, 2023, he shall be removed from the caption, and it is further
ORDERED that the caption is amended to read:
SVETLANA KHANDROS, as an Executor of the Estate ofVALERIY KHANDROS, deceased, and SVETLANAKHANDROS, individually,Plaintiff, 
againstBORIS KHORETS, M.D., PIERRE HINDY, M.D., SERGEYTERUSHKIN, M.D., PIERRE J. NOEL, M.D., HOWARDLIANG, M.D., NEW YORK COMMUNITY HOSPITALand NYU MEDICAL CENTER,Defendants.
The Clerk shall enter judgment in favor of Leonid Kozer, M.D., sued herein as LEONARD KOZER, M.D.
This constitutes the decision and order of this Court.ENTER.Hon. Consuelo Mallafre MelendezJ.S.C.

Footnotes

Footnote 1:Defendants Boris Khorets, M.D. and Pierre Hindy, M.D. have not moved for summary judgment. Defendant Isaia Avraham, M.D. was previously granted summary judgment without opposition on June 28, 2023, and there are no remaining claims or vicarious liability claims on his behalf in this action.

Footnote 2:Although not named as a defendant in this action, Dr. Khan was deposed and testified that he was an NYU Langone employee at the time of the events. NYU does not contest their vicarious liability for his alleged acts and omissions.